IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Habeeb Abdul Malik, a/k/a Ron Tearia Nicholas,<br><br>    Plaintiff,<br><br> v.<br><br>Beverly A. Woods, Psychiatrist; Brian Stirling, SCDC Director; Bernard McKie, SCDC Warden; Robert Ward, Deputy Director; Janice Phillips, Health Care Authority, sued in their personal and official capacities<br><br>    Defendants. | C/A No. 5:14-3473-RBH-KDW<br><br><br><br>Report and Recommendation |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment. ECF No. 68. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on April 6, 2015, advising Plaintiff of the importance of such a motion and of the need for him to file an adequate response. ECF No. 69. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on May 13, 2015, ECF No. 78, to which Defendants replied on May 26, 2015, ECF No. 82. On June 10, 2015, Plaintiff filed a Sur Reply to Defendants' Motion. ECF No. 83. After Defendants' Summary Judgment Motion became ripe for review, Plaintiff filed a Motion for a Preliminary Injunction on August 31, 2015. ECF No. 101. Defendants responded to Plaintiff's Motion on September 17, 2015, ECF No. 102, and Plaintiff did not reply. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e),

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

D.S.C. Because these Motions are dispositive, a Report and Recommendation is entered for the court's review.

I.      Background

Plaintiff Habeeb Abdul Malik is currently incarcerated at SCDC's Kirkland Correctional Institution ("KCI"). ECF No. 1 at 2. Plaintiff represents that he is severely mentally ill and, in 1992, his mother committed him to Charter Hospital of Augusta where he was an inpatient and was diagnosed with major depression and extreme anti-social personality. *Id.* at 3. Plaintiff alleges that he was placed on psychotropic medication during his hospitalization and further alleges that his "mental health problems led to his incarceration and continued upon his incarceration to the SCDC." *Id.*

Plaintiff maintains that in 1999 he was placed in solitary confinement where he is "confined in a small cell for 23 hours everyday, [is] socially isolated, [and] only permitted the bare essentials." *Id.* at 4. Plaintiff alleges that he spent five years in these conditions until 2004 when he was moved to the Maximum Security Unit ("MSU"), "a supermax facility." *Id.* Plaintiff alleges that "[d]escribing this place one could say it is the misery of ordinary solitary confinement multiplied 10x times." *Id.* Plaintiff represents that he has spent roughly 15 years in solitary confinement "under the most rigid and harshest conditions [where] his mental health has deteriorated greatly." *Id.* Plaintiff alleges that he has had to be placed on several different psychotropic drugs for various mental illnesses, including bipolar disorder. *Id.* Plaintiff maintains that he "takes Lithium for his mood disorder, Effexor to help with his depression, Neurontin for his irritability and physical pain, Proponalol for his anxiety, Benadryl for a sleep disorder, and Prozasin for flashbacks and recurring nightmares." *Id.* at 5. Additionally, Plaintiff maintains that

he has also taken Prozac, Tegratol, Invega, Thorazin, Selexa, Cogentin, and Geodine—a combination of drugs for depression, mood stability, and psychotic behavior. *Id.*

Plaintiff alleges that Defendants are aware of his "extensive mental health history and the various psychotropic drugs he's taking (in the past as well)." *Id.* Plaintiff maintains that his illnesses require specialized treatment including "individual psychiatric care focusing on his intrapsychic tension," individual and group therapy, and various other types of counseling. *Id.* Moreover, Plaintiff alleges that "[D]efendants are aware that the isolation and toxicity of the MSU environment is exacerbating the deterioration" of his mental health. *Id.* at 5-6. Plaintiff maintains that he has told Defendants of the "unavailability of qualified mental health personnel whenever he experiences a psychotic episode, or gets depressed to the point of suicidal thinking." *Id.* at 6. Plaintiff further maintains that often MSU guards will "poke fun at his mental health issues and often times will not contact any mental health personnel when he's in a manic or depressive state." *Id.* Plaintiff also alleges that his "psychotic behavior is often responded to with threats of being tear gassed, placed in a restraint chair, or a strip cell where everything is taken out of the cell and he's left in that cell totally naked, confused, disoriented, cold, and filthy from the denial of hygiene." *Id.*

Plaintiff maintains that Defendants have been deliberately indifferent to his mental health needs because they have refused to place him in a psychiatric ward where he would have "around the clock access to qualified mental health personnel. . . ." *Id.* at 7. Plaintiff alleges that Defendants have been "deliberately indifferent in knowing the adverse effects of prolonged confinement in the MSU" yet have kept Plaintiff confined there for "11 years under the most rigid and harshest conditions; deliberately indifferent to the possibility that such an environment could cause [Plaintiff] to kill himself." *Id.* Plaintiff also alleges that Defendants know of his

extensive medication use "yet there is no medication management in terms of monitoring the vast side effects of such high powered drugs. . . ." *Id.* at 8.

Plaintiff represents that the "theme of this lawsuit is that the [D]efendants have not taken reasonable steps to prevent the likely risk of harm in housing a seriously mentally ill inmate in supermax [and] MSU is not appropriate for seriously mentally ill inmates due to the isolation component [and] the inadequate level of qualified mental health staffing." *Id.* Plaintiff brings a cause of action for violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 10. Plaintiff seeks $1,000,000 in compensatory damages and $20,000 in punitive damages against each Defendant. *Id.* Additionally, Plaintiff seeks an injunction "ordering [Defendants] to immediately transfer the Plaintiff from the MSU to a psychiatric care facility to undergo a thorough psychiatric examination in a less stressful mental health treatment setting. The court should also order that the Plaintiff not be transferred back to the MSU." *Id.*

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    III.    Analysis

        1.  Defendants' Motion for Summary Judgment

           A.  Failure to State a Claim

Defendants maintain that Plaintiff's Complaint should be dismissed for his failure to plead plausible, fact-based claims as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ECF No. 68-1 at 2-4. Though Defendants argue that Rule 8 does not require detailed factual allegations, they argue that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 2. Specifically, Defendants maintain that Plaintiff's Complaint is largely devoid of facts relative to any acts or omissions by Defendants, and Plaintiff only offers generalized allegations that he suffers from a mental illness and that his continued placement in the MSU is causing his mental health to deteriorate. *Id.*

In his Response, Plaintiff argues that Defendants were deliberately indifferent to the risk that he would attempt suicide while in the MSU by refusing to treat him and were deliberate indifferent by placing him in the supermax because the conditions of confinement there exacerbated his mental illness. ECF No. 78 at 3. Additionally, Plaintiff represents that he "expressed on numerous occasions to [his] psychiatrist [D]efendant Beverly A. Woods that [he] was decompensating in the MSU supermax and that [he] was thinking of suicide because [he] couldn't deal with life anymore." *Id.* Plaintiff also references several other interactions with Defendant Woods and discusses her answers to his interrogatories. *Id.* at 3-19.

Rule 8 of the Federal Rules of Civil Procedure requires that complaints shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose

5

behind Rule 8 is to give the defendant fair notice of the claims and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly* Court noted that defendants will not know how to respond to conclusory allegations, especially when "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 565 n.10. However, *Twombly* did not expressly hold that a plaintiff must assert specific time, place, and persons involved in order to comply with Rule 8. *See Ashcroft*, 556 U.S. at 678 (internal *Twombly* citation omitted) ("As the Court held in *Twombly,* [] the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010) (finding the *Twombly* court noted, in dicta, that the pleadings there mentioned no specific time, place, or person involved in the alleged conspiracies and rejected defendants' argument that *Twombly* requires a plaintiff identify the specific time, place, or person related to each conspiracy allegation); *Milliken & Co. v. CNA Holdings, Inc.*, 3:08-CV-578-RV, 2011 WL 3444013, at *5 (W.D.N.C. Aug. 8, 2011) (finding other courts have held a plaintiff can survive a motion to dismiss even though he fails to answer who, what, when and where).

   Plaintiff is proceeding pro se in this case. Pro se complaints should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. *Estelle v.*

*Gamble,* 429 U.S. 97, 105 (1976). Dismissal of a pro se complaint for failure to state a valid claim is only appropriate when, after applying this liberal construction, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519 (1972). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller*, 901 F.2d at 390-91.

With the exception of allegations made against Defendant Woods, the undersigned finds Plaintiff has failed to satisfy Rule 8's pleading requirements. In his Complaint, he made only general accusations about the conditions of his confinement in maximum security and did not allege that any specific Defendant violated a constitutional right. Since filing his initial Complaint, Plaintiff added Defendant Woods as a party after discovering her name. ECF No. 1-2 at 1. Further, in his Response to Defendants' Motion for Summary Judgment, Plaintiff clarifies that he made Defendant Woods specifically aware of certain medical conditions and needs. *See* ECF No. 78. Therefore, the undersigned recommends granting Defendants' Motion for Summary Judgment and dismissing all Defendants except Defendant Woods based on Plaintiff's failure to comply with the requirements of Rule 8. The undersigned will address Plaintiff's purported causes of action in turn.[2]

---

[2] In Defendants' final argument, they maintain that Defendant Janice Phillips is entitled to summary judgment because she played no role in any medical decisions related to Plaintiff's mental health care. ECF No. 68-1 at 16. Based on the undersigned's recommendation that all Defendants be dismissed except Defendant Woods, it is unnecessary for the undersigned to address this final argument. However, to the extent the district court addresses the merits of this argument, the undersigned recommends finding that Defendant Phillips be dismissed as party because no allegations or evidence demonstrate that she had any involvement in Plaintiff's medical or mental health care.

B.     Statute of Limitations

Defendants maintain that Plaintiff's claims, in part, are barred by the statute of limitations because "he appears to be asserting claims and seeking damages for a period of eleven years." ECF No. 68-1 at 5 (citing ECF No. 1 at 10). Defendants argue that the applicable statute of limitations is three years, and using his filing date of August 26, 2014, "Defendants submit that all claims arising prior to August 26, 2011 are time-barred." *Id.* Plaintiff does not specifically address Defendants' statute of limitations argument in his Response. *See* ECF No. 78. The undersigned agrees with Defendants.

Federal courts should adopt the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261 (1985), *superseded by statute on other grounds in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Under South Carolina law, the statute of limitations for a personal injury claim is three years. S.C. Code Ann. § 15–3–530(5). Thus, the statute of limitations period for this action is three years. To the extent Plaintiff seeks damages for claims that occurred prior to August 26, 2011, the undersigned recommends finding that these claims are barred by the three-year statute of limitations.

C.     Medical Indifference

Defendants maintain that Plaintiff cannot show that Defendants have been deliberately indifferent to his mental health needs. ECF No. 68-1 at 6-12. Defendants argue that Plaintiff has alleged that he not receiving adequate treatment for his mental illnesses while being housed in the MSU. *Id.* at 7. However, Defendants maintain that under Fourth Circuit case law Plaintiff is not entitled to "effective" treatment and allegations of inadequate medical care are not cognizable § 1983 actions. *Id.*

Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference. . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In support of their Motion for Summary Judgment, Defendants attached Defendant Woods' affidavit. ECF No. 68-3. Defendant Woods, Chief of Psychiatry for SCDC, is Plaintiff's assigned psychiatrist, and she attests that she has "provided mental health services to [Plaintiff], including diagnoses, counseling and seeing [him] periodically, [including] medication management." *Id.* at ¶¶ 3-4. Defendant Woods avers that she has seen Plaintiff regularly since 2009, and has "provided regular care and monitoring of his mental health care needs, which includes visits with [Plaintiff] and monitoring his complaints and symptoms as related to his

clinical counselor as recorded in the AMRs."[3] *Id.* at ¶ 7. Defendant Woods represents that Plaintiff "is currently diagnosed with Depressive Disorder Not Otherwise Specified (NOS) and Intermittent Explosive Disorder," and contrary to Plaintiff's assertions, "[h]e has not been diagnosed with Bipolar Affective Disorder or Major Depressive Disorder or Post Traumatic Stress Disorder." *Id.* at ¶ 8. Regarding Plaintiff's medications, Defendant Woods represents:

> [Plaintiff] has been prescribed various medications for treatment of his mental health condition. Those medications are administered daily as documented in the Medication Administration Records (MARs), and are regularly monitored by the counselor and by myself. [Plaintiff] has expressed problems with certain medications and side effects, and efforts are made on a continuous basis to address those concerns by trying alternative medications in an attempt to find the most appropriate regimen to address and care for [Plaintiff's] condition. As documented in the AMRs, [Plaintiff] has been often prescribed medications to address the side effects from the psychotropic medications. Side effects cannot always be avoided, but efforts are made to address and ameliorate the side effects of which [Plaintiff] has complained. As indicated, the AMRs reflect the efforts myself and the mental health staff have made to address [Plaintiff's] concerns in this regard.

*Id.* at ¶ 9. Defendant Woods further attests that Plaintiff's "placement in the MSU is not causing him a substantial risk of serious harm, [and his] mental health condition is being appropriately monitored and managed in MSU." *Id.* at ¶ 11.

In addition to Defendant Woods' affidavit, Defendants attached Plaintiff's complete AMRs from January 2010 through November 18, 2014 and Plaintiff's Medication Administration Records ("MARs") from January 2010 through August 2014. *See* ECF Nos. 68-1; 68-5. The AMRs indicate that Plaintiff has met with personnel from the Mental Health Clinic at least on a monthly basis, and in most months he had several encounters. *See* ECF No. 68-5. Notably, in some instances, Plaintiff reported that he had no side effects from his medications. *See* ECF No. 68-5 at Medical Encounters 873, 858. One encounter indicates that Plaintiff

---

[3] AMR stands for "Automated Medical Records." *See* ECF No. 68-1 at 8.

reported taking his medications daily and expressed that they were helping him. *See id.* at Medical Encounter 860. In that same encounter, Plaintiff denied suicidal or homicidal ideations. *Id.* Overall, Plaintiff had 348 AMRs for the time frame Defendants included. There are also 21 pages of Plaintiff's MARs included in Defendants' attachment which indicate Defendants' efforts to ensure Plaintiff was using his medications as directed as well their efforts to adjust medications. *See* ECF No. 68-5 at 101-122.

The undersigned finds that Plaintiff's allegations of medical indifference fail as a matter of law. In his Complaint, Plaintiff alleges that he suffers from several mental illnesses for which he is not receiving adequate or effective treatment. Plaintiff references several instances where he has met with Defendant Woods concerning his mental health issues, but maintains that he is unsatisfied with the action taken by Defendant Woods and the treatment plan in place. However, Plaintiff's disagreement with Defendant Woods regarding his treatment does not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician had been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Brissette v. Stepke*, No. 13-1355-BTM-RBB, 2013 WL 4806516, at *2 (S.D. Cal. Sept. 9, 2013) ("Based on the record before the Court, Plaintiff is not receiving Provigil based on the medical opinion of Dr. Finander that Plaintiff does not suffer from narcolepsy. Dr. Finander's medical opinion may be different from that of Dr. Straga or the emergency room doctor. However, a difference of medical opinion is insufficient to establish deliberate indifference."); *Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). As the Fourth Circuit Court of Appeals articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (internal citations omitted).

The undersigned finds that Plaintiff's Complaint and the evidence he submitted to the court fail to contain facts that, if true, demonstrate Defendant Woods knew of and disregarded Plaintiff's serious medical needs. Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment and dismissing Plaintiff's medical indifference claim.

### D.  Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 68-1 at 12-14. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.  In determining whether the right violated was

clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendant Woods performed the discretionary functions of her respective official duties in an objectively reasonable fashion. Defendant Woods did not transgress any statutory or constitutional rights of Plaintiff that she was aware of in the exercise of her respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant Woods be granted qualified immunity.

E.   Petition for Habeas Corpus; Release from MSU; Exhaustion

Defendants argue that Plaintiff is asking for immediate release from MSU, but Plaintiff "may only obtain his release from MSU to a less restrictive custody level, if such relief is even available, by means of habeas petition." ECF No. 68-1 at 14-15. However, Defendants recognize that "[t]he Fourth Circuit has not yet addressed, however, whether an inmate may seek release from administrative segregation by means of a Section 1983 action or a habeas petition. *Id.* at 15.

Based on the undersigned's above recommendations, it is unnecessary to address the merits of this argument. However, the undersigned notes that prison officials are afforded a great deal of deference in making policy decisions related to prison life. *See Joe v. Ozmint*, No. 08–cv–0585, 2008 WL 5076858, at *3 (D.S.C. Nov. 21, 2008). Generally, a court will grant preliminary

injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The burden is on the plaintiff to "clearly demonstrate that the public interest is served by granting him injunctive relief, and that granting such relief would impose no great hardship upon the officials or the prison system as a whole." *See Joe,* 2008 WL 5076858, at *4. Here, the undersigned finds that exceptional circumstances to not exist to warrant granting Plaintiff injunctive relief. Moreover, Plaintiff admittedly is at times suicidal and homicidal, *see* ECF No. 78 at 3, therefore, placement outside of MSU could be impose a great hardship upon the officials or the prison system as a whole. Therefore, to the extent the district court addresses this argument on its merits, the undersigned recommends that Plaintiff not be granted the injunctive relief of release from MSU.

2. Plaintiff's Motion for Injunctive Relief

On August 31, 2015, Plaintiff filed a Motion for a Preliminary Injunction. ECF No. 101. Therein, Plaintiff argued that the evidence supports a grant of a preliminary injunction based on irreparable harm and that "[D]efendants will suffer no harm because they are only being asked to do what they are required to do by the law and their own policies. . . ." *Id.* at 1-2. Plaintiff also argues that he has presented evidence to prove that the Defendants have not treated his mental illness and have put him at risk for potential suicide. *Id.* at 2. Finally, Plaintiff argues that providing him with mental health treatment "is undoubtedly in the public interest." *Id.* at 3. Therefore, plaintiff requests that the court order Defendants move Plaintiff from MSU "and place him in a psychiatric setting [and] place [him] in their step down program." *Id.* Defendants responded and assert that the court does not have the authority to order a transfer for Plaintiff. ECF No. 102 at 1. Further, Defendants argue that Plaintiff cannot show that he is entitled to an

order directing that he be provided in-patient psychiatric care based on the factors outlined in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). *Id.* at 2.

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal citations and quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

An analysis of the *Winter* factors reveals that Plaintiff's motion for injunctive relief should be denied. First, the undersigned already recommended granting Defendants' Motion for Summary Judgment and dismissing Plaintiff's Complaint—therefore, pending a ruling from the district court, he will not likely succeed on the merits of his Complaint. Second, though Plaintiff represents that he has suicidal tendencies, he is not otherwise threatened with imminent injury, loss, or damage in MSU. Finally, Plaintiff has not shown that the balance of equities tips in his favor or that a preliminary injunction is in the public interest. Accordingly, the undersigned recommends that Plaintiff's Motion, ECF No. 101, be denied.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 68, **be granted**, Plaintiff's Motion for Injunctive Relief, ECF No. 101, **be denied**, and that Plaintiff's case against Defendants be dismissed.

IT IS SO RECOMMENDED.

October 9, 2015                                                                    Kaymani D. West
Florence, South Carolina                                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**